UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOSEPH TRAVERS,<br><br>       Plaintiff,<br><br>v.<br><br>FLIGHT SERVICES & SYSTEMS, INC.<br><br>       Defendant. | )<br>)<br>)<br>)<br>)  CIVIL ACTION<br>)  NO. 1:11-cv-10175-GAO<br>)<br>)<br>)<br>)<br>) |

**DEFENDANT'S STATEMENT OF MATERIAL FACTS
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Defendant Flight Services & Systems, Inc. ("FSS") hereby submits this statement of material facts in support of its motion for summary judgment on the two-count complaint for retaliation ("Complaint") of plaintiff Joseph Travers ("Travers").

1. For its business, FSS contracts with airlines for a number of different types of services. (See Complaint, Docket Entry 1 at ¶ 5; Verified Answer and Affirmative Defenses ("Answer"), Docket Entry 4 at ¶ 5)

2. FSS has approximately 1,400 employees at 17 different airports. (See Affidavit of Jeffrey M. Rosin ("Rosin Aff.") filed herewith, Tab 1, Excerpts from Deposition of Sarah Collier, at 12) FSS employs skycaps at about half of those locations. (Id. at 13)  The other types of employees FSS employs include wheelchair attendants, ticket agents, ramp employees, aircraft cleaners, baggage handlers, aircraft security, and escorts. (Id.)

3. FSS has approximately 400 employees at Logan Airport in Boston. (See Rosin Aff., Tab 2, Excerpts from Deposition of Lisa Varotsis, at 8)  There are approximately 135 employees of FSS working in Terminal C at Logan Airport including skycaps, wheelchair attendants, baggage

1

handlers, and security personnel. (Id. at 28)  FSS employs approximately 9-10 skycaps at that terminal as well. (Id. at 29)

4.   Travers was employed by FSS as a skycap from 2004 until September 27, 2010 at Logan Airport, servicing customers of JetBlue Airways Corporation ("JetBlue") at Terminal C. (See Complaint, Docket Entry 1 at ¶ 4; Answer, Docket Entry 4 at ¶ 4)

5.   Lisa Varotsis ("Varotsis") was the General Manager responsible for overseeing those employees starting April 6, 2010. (See Rosin Aff., Tab 2 at 11, 13-14, 21)  Before that, Varotsis worked for Federal Express for 24 years. (Id. at 24-25)

6.   John Cardinale ("Cardinale") was the manager responsible for the JetBlue terminal from the time Varotsis began until May 2011. (Rosin Aff, Tab 2. at 15)

7.   FSS's employee policy manual states as follows regarding the solicitation of tips:

> Solicitation of Tips
>
> Solicitation of tips shall not be condoned.  This includes any form of solicitation to include but not limited to – advising passengers of the amount of the tip that they must give to the employee for the service provided, refusing to provide service without first receiving a tip, selling weight, etc.  Employees who are found to have solicited tips will be terminated immediately.

(See Rosin Aff., Tab 3 at p. 25 (Excerpts from FSS Employee Handbook))

8.   FSS's employee policy manual lists a number of matters that will lead to suspension pending investigation for termination, and "Solicitation of tips" is item 26 on such list. (Id. at p. 32-33)

9.   FSS's employment policy manual also states as follows:

> Conduct Standards Regulations
>
> All FSS employees are subject to the following standard of conduct.  Failure to adhere to this policy will result in disciplinary action up to an including termination.  The following conduct reminders highlight key rules of conduct for uniformed employees working at airports.

> ▪ When dealing with the public and our airline customers and each other, uniformed employees shall be patient, courteous and respectful.
>
> ▪ Employees shall be tactful in the performance of their duties, shall control their tempers, and excise patience and discretion.

(See Rosin Aff., Tab 3 at p. 27)

10. On September 3, 2010, FSS received a complaint from a passenger. (See Rosin Aff., Tab 4, at 35-37 (Excerpts from Deposition of John Cardinale ("Cardinale Dep.")))  The complaint from passenger Michelle Saulnier read as follows:

> The baggage man informed me that a tip is required just as you would tip at a restaurant.  He said this is his lively hood. [sic]  When I only tipped $1 he got angrier and said he was sorry I didn't like the service.  He walked away, told someone he was going on break & slammed the door.  I felt like he was hussling [sic] people.

(See Rosin Aff., Tab 5 (Saulnier Complaint))

11. Saulnier made the complaint to JetBlue's employee, Jocelyn Bue ("Bue"), who prepared a statement which read as follows:

> I was called to the Service Center to speak with a customer on Friday September 3, 2010.
> Ms. Saulnier was extremely upset.  She told me that she had checked in outside with a skycap and left feeling bullied.
> The Customer stated she handed the skycap a $100.00 bill and was asked how much change she wanted back?  Her reply was $98.00.  The skycap then told her it was customary to tip that this was his lively hood. [sic]
> The customer then replied she would like $97.00 back; the skycap's response was I am sorry you didn't like my service.
> The Skycap then announced he was taking his break turned [sic] to go into a room slamming the door.
> I asked her to describe the skycap and she said he was the only white male out there.
> I apologized for his actions and said that I would turn his name into his Manager so it could be addressed to further prevent this from happing [sic] to another customer.
> I asked her please write a statement including her Name, PNR, and phone number in case the Manager from FSS wanted to contact her.

1781152.1

(See Rosin Aff., Tab 6 (Bue Statement))

12. Cardinale and Nabil Agba ("Agba"), Travers' supervisor, met with Travers on September 3, 2010, and Travers wrote a statement as follows:

> I do Recall customer. When she Arrived At Podium, I Requested I.D. and How many Bags. Proceeded to Checkin Customer. Informed her of $2.00 fee. Adv customer fee was JetBlue and Tip was not included. Cust got upset and stated she didn't have to Tip. I Responded Tip was optional Just Like Restaurant and I Apologize if she Didn't Like The Service. I then went on Break.

(See Rosin Aff. Tab 7 at 2 (FSS Disciplinary Action Form))

13. Travers' employment was immediately suspended. (Id.) Cardinale and Varotsis made that decision. (See Rosin Aff., Tab 2 at 77; Rosin Aff., Tab 4 at 37)

14. Varotsis then conducted an investigation. (See Rosin Aff., Tab 2 at 78-83)

15. Varotsis is responsible for termination decisions in Boston. (See Id. at 23)

16. Upon her investigation, Varotsis recommended termination of Travers' employment. (See Docket Entry 4 at Exhibit A thereto, ¶ 3 (Affidavit of Lisa Varotsis ("Varotsis Aff.")); see also Rosin Aff., Tab 2 at 84)

17. Varotsis testified that Travers' solicitation of a tip from the passenger and his rudeness to the passenger were the primary reasons. (See Rosin Aff., Tab 2 at 94-96; see also Docket Entry 4 at Exhibit A thereto, ¶¶ 3a.-c., e.) Varotsis had a first-hand complaint from a passenger about the tip solicitation, and Travers himself corroborated the passenger's complaint. (Docket Entry 4 at Exhibit A thereto, ¶ 3.c; compare Rosin Aff. Tab 5, with Rosin Aff. Tab 7)

18. Varotsis also felt Travers did not obey her instructions while suspended and that he engaged in bullying and badgering behavior toward her during his suspension. (Docket Entry 4 at Exhibit A thereto, ¶ 3.g and Tab 5 thereto; see also Rosin Aff., Tab 8 (Notes of Lisa Varotsis))

4

Cardinale witnessed Travers attempting to intimidate Varotsis as well. (See Rosin Aff., Tab 4 at 50-53)

19. If a termination decision is for a corporate policy violation, Varotsis needs to consult with Collier before the termination takes place. (See Rosin Aff., Tab 2 at 23-24)  As Director of Human Resources, Collier's job responsibilities include approving or disapproving of termination decisions by managers such as Varotsis. (See Rosin Aff., Tab 1, at 15, 16-17)  As Collier testified, she is the "final word" on terminations. (Id. at 16)

20. Varotsis's decision was reviewed by Collier, who confirmed that Varotsis was clear to terminate Travers. (See Rosin Aff., Tab 2 at 83-84; Rosin Aff., Tab 1 at 38-40, 42)

21. Collier testified that if there's tip solicitation, supported with first-person proof, that always results in termination. (See Rosin Aff., Tab 1 at 25)  With that evidence:

> There is never an exception on solicitation.  As long as I've been in this business, solicitations and selling weight are the two incidences of discipline that will be terminated every time.

(Id.)  This is so even if the employee denies the incident. (Id. at 26)

22. The times where an allegation of tip solicitation does not result in termination is where there is no first-person complaint or the complaint comes from an airline as opposed to a passenger. (Id. at 27)

23. On September 27, 2010, Varotsis and Cardinale met with Travers in the presence of a Massachusetts State Police Officer, whose presence Varotsis had requested. (See Docket Entry 4 at Exhibit A thereto, ¶ 5)  Varotsis terminated Travers' employment at that meeting. (Id.)

24. FSS has disciplined and terminated a number of other employees for tip solicitation (see ¶ 25.a-f, below), and Travers's own testimony shows his awareness of employees being disciplined for tip solicitation and the risk of termination for engaging in the same:

    a.    Travers testified by affidavit as follows in 2009 in the JetBlue Lawsuit:

> JetBlue also instructs FSS to discipline or transfer skycaps who do not perform their job responsibilities properly. For example: . . . [I]n response to complaints from customers concerning tip solicitation by FSS skycaps, Jim Celeste and Cheryl Ricupero have instructed my FSS manager, Rob Nichols, to have those skycap [sic] terminated.

(Id. at Tab 9.a, Docket Entry 86-5 at ¶ 5 (filed October 2, 2009); see also Docket Entry 24 at p. 2 and Tab A thereto)

    b.    At his deposition in the JetBlue Litigation, on January 20, 2010, Travers testified that another FSS skycap who he worked with at Logan Airport, "Tony," was fired for tip solicitation and for his wife calling the passenger who complained of the tip solicitation begging the passenger not to make the complaint. (See Rosin Aff., Tab 9.b at pp. 44-48, 57; see also Docket Entry 24 at p. 2 and Tab B)

    c.    At the same deposition, Travers indicated his understanding that tip solicitation was a terminable offense, and that raising any issues about tips with customers, whatsoever, was "getting on a fine line of getting fired from your job." (See Rosin Aff., Tab 9.b at pp. 76-77; see also Docket Entry 24 at p. 2 and Tab B)

25.    Documentary evidence shows that those terminated for tip solicitation by FSS at Logan Airport were also terminated based on first hand passenger complaints and those not terminated for tip solicitation were lacking a first hand complaint. (See Rosin Aff., Tabs 10.a-f)

    a.    Kwadwo Acheampong was terminated after first hand passenger complaint for allegedly threatening to leave a passenger at the gate if the passenger did not tip. (Id. at Tab 10.a)

    b.    Sami Gjinishi was terminated after first hand passenger complaint for aggressively soliciting a tip from an elderly passenger. (Id. at Tab 10.b)

6

c. Gerry Quantaro ("Quantaro") was terminated after first hand passenger complaint for soliciting a tip and speaking rudely to that passenger. (Id. at Tab 10.c)

d. Lumturi Noti was terminated after first hand passenger complaint for soliciting a tip and rolling the passenger in her wheelchair to an ATM to get cash for a tip. (Id. at Tab 10.d)

e. Jing Wei was suspended and reinstated after an investigation into a third party complaint (not a first hand passenger complaint), the substance of which he completely denied. (Id. at Tab 10.e; see also ¶¶ 27-28 herein)

f. This was also the case at airports other than Boston, as, for example, skycap Emmanuel Adom was also terminated from his position at Reagan Washington National Airport based upon a first-hand passenger complaint alleging tip solicitation. (See Rosin Aff., Tab 10.f; see also Docket Entry 4 at Exhibit D thereto, ¶¶ 2-4 (Affidavit of Elisabet Kincaid))

26. In Quantaro's situation, there was a first hand passenger complaint (and Quantaro was rude to the customer), but Quantaro completely denied the facts alleged, not corroborating any of them. (See Rosin Aff., Tab 10.c) Varotsis again recommended termination to Collier, who approved the termination. (See Rosin Aff., Tab 2 at 162-63)

27. On or about September 7, 2010, FSS suspended Jing Wei ("Wei"), another skycap in Boston who was suing FSS in the JetBlue Litigation, for a complaint about tip solicitation. (See Docket Entry 4 at Exhibit A thereto, ¶¶ 7-8)

28. Among other things, unlike Travers' situation, (i) FSS had only a third party complaint about the tip solicitation and did not have a complaint from the passenger herself, and (ii) Wei denied all facts about the alleged tip solicitation and did not corroborate any facts regarding the

7

passenger's complaint at all. (See Id. ¶ 8)  Accordingly, Wei's employment was not terminated. (Id.)  The documents pertaining to Wei's suspension are attached to the Affidavit of Jeffrey Rosin.  (See Rosin Aff., at Tab 10.e)

29.	Travers claims in this action that his termination is motivated by retaliation for his participation as a plaintiff in the action Travers et al. v. JetBlue Airways, Inc. and Flight Services & Systems, Inc. D. Mass. Civil Action. No. 08-cv-10730-GAO ("JetBlue Lawsuit") (See Complaint, Docket Entry 1)

30.	In support of such claim, Travers asserts he "has been the most actively-engaged plaintiff[] in the [JetBlue Lawsuit]," as he was the first deposed and submitted two sworn affidavits. (Complaint ¶ 9)

  a.	Travers was the first deposed, although he was deposed on the same day as Wei, a fellow plaintiff skycap in the JetBlue Lawsuit, January 20, 2010. (See Rosin Aff., Tab 11 thereto ((Plaintiffs Travers and Wei Deposition Transcript Cover Sheets, indicating they were both deposed on January 20, 2010))

  b.	The Docket Entries from the JetBlue Lawsuit reflect two affidavits from Travers, dated June 30, 2009 and September 30, 2009. (See Rosin Aff., Tab 9.a; see also JetBlue Lawsuit, Docket Entry 61-8, 86-5)  The latter affidavit is Travers' affidavit in response to JetBlue's motion for summary judgment and has to do with trying to prove that JetBlue is Travers' joint employer. (Id.) The former was filed by Travers as an attachment to his motion for conditional certification against JetBlue and is nearly identical to the affidavits submitted by fellow plaintiffs in the JetBlue Lawsuit, Laurence McLarty and Randolph Trim. (See JetBlue Lawsuit, Docket Entries 25-2-3, 61-9-10)

31. In further support of his retaliation claim, Travers asserts in his Complaint: "By the time he initiated the lawsuit against JetBlue and FSS, Travers had worked for FSS for approximately four years. During that time he had never been subject to disciplinary action." (Complaint, ¶ 10)

   a. Travers was disciplined in March 2010 for improper and aggressive behavior toward Agba. (See Rosin Aff., Tab 12 thereto (Excerpts from Deposition of Nabil Agba ("Agba Dep.") at 13; Id. at Tab 13)

   b. Documentary evidence supports such discipline as well. (See Id. at Tab 13)

32. In further support of his claim of retaliation in this case, Travers claims in his Complaint: "During [his] tenure working as a skycap for FSS, no other skycap had ever been terminated for purportedly soliciting a tip from a passenger." (Complaint, Docket Entry 1 ¶ 15)

   a. The evidence supporting Paragraphs 24-26 above, and set forth in the Rosin Affidavit, Tabs 10-11a.-g and the Kincaid Affidavit filed herewith, refute this. Such evidence shows skycaps (and other employees) being terminated for tip solicitation both during and after Travers' employment with FSS.

   b. Wei was also a plaintiff in the JetBlue Lawsuit. (See Civil Action. No. 08-cv-10730-GAO, Docket Entry 39 (Amended Complaint)) As noted above, upon investigation for tip solicitation, there was not first hand evidence or any admissions from Wei, so his employment was not terminated.

33. In further support of his claim of retaliation, Travers claims in his Complaint: "Other skycaps who have been involved in the JetBlue Lawsuit [Civil Action. No. 08-cv-10730-GAO] have felt fear of retaliation from FSS. Two named plaintiffs have withdrawn from the case."

   a. Before Travers' termination, two named plaintiffs had withdrawn from the JetBlue Lawsuit: (i) on May 27, 2010, plaintiff Moises Jackson ("Jackson") withdrew

from the JetBlue Lawsuit (see Civil Action. No. 08-cv-10730-GAO, Docket Entry 118); and (ii) on June 10, 2010, plaintiff Ezequias Paz ("Paz") withdrew from the JetBlue Lawsuit. (See Civil Action. No. 08-cv-10730-GAO, Docket Entry 118)

b.  As both Jackson and Paz state in their declarations, neither of them withdrew for fear of retaliation. (See Rosin Aff., Tab 14 (Declaration of Jackson), ¶ 4), and Tab 15 (Declaration of Paz), ¶ 4)

c.  Paz was deposed in this matter[1] and further testified that he did not withdraw for fear of retaliation. (See Rosin Aff., Tab 16 (Excerpts from Deposition of Paz) at 38-42)

d.  Both Jackson and Paz informed management that they wanted out of the case, that Travers was badgering them to stay in the case, and that their counsel (the same counsel for Travers here) was not responding to their requests to get out of the case. (See Rosin Aff., Tab 2 at 59-67; see also Rosin Aff., Tab 4 at 29-31)

e.  On November 19, 2010 and March 17, 2011, two other plaintiffs – Rachid Faiz ("Faiz") and Abdelati Ennakori (Énnakori") – withdrew from the JetBlue Lawsuit as well. (See Civil Action. No. 08-cv-10730-GAO, Docket Entry 143, 145)  Both of Faiz and Ennakori provided declarations stating they did not do so for fear of retaliation. (See Rosin Aff., Tab 17 (Declaration of Faiz), ¶ 4), and Tab 18 (Declaration of Ennakori), ¶ 7)

g.  Faiz was deposed and further testified he did not withdraw for fear of retaliation. (See Rosin Aff., Tab 19 at 19-23 (Excerpts from Transcript of Deposition of Faiz))  Ennakori was also deposed and further testified he did not withdraw for fear of retaliation. (See Rosin Aff., Tab 20 at 24-28 (Excerpts from Transcript of Deposition of Ennakori))

---

[1]  Jackson was not deposed.

10

    h.      Faiz and Ennakori both told management they had been trying to get out of the case, that Travers had been pressuring them to stay in and that their lawyer (the same counsel for Travers here) was not responding to their requests to get out of the case. (See Rosin Aff., Tab 2 at 66-69; see also Rosin Aff., Tab 4 at 25-28)

Respectfully submitted this 13th day of July, 2012,

FLIGHT SERVICES AND SYSTEMS, INC.,

By and through its counsel,

/s/ Jeffrey M. Rosin
Jeffrey M. Rosin
 BBO# 629216
 *jrosin@constangy.com*
Christopher M. Pardo
 BBO# 674674
 *cpardo@constangy.com*
Constangy, Brooks & Smith, LLP
535 Boylston Street, Suite 902
Boston, Massachusetts  02116
Phone: 617.849.7880

## CERTIFICATE OF SERVICE

I, Jeffrey M. Rosin, hereby certify that, on this 13th day of July, 2012, this document was filed through the CM/ECF system and will be sent electronically to all registered participants as identified on the Notice of Electronic Filing.

/s/ Jeffrey M. Rosin
Jeffrey M. Rosin