UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 11-10175-GAO

JOSEPH TRAVERS,
Plaintiff,

v.

FLIGHT SERVICES & SYSTEMS, INC.,
Defendant.

OPINION AND ORDER
March 7, 2013

O'TOOLE, D.J.

The plaintiff, Joseph Travers, sues the defendant, Flight Services & Systems, Inc. ("FSS") under 29 U.S.C. § 215(a)(3) and Massachusetts General Laws ch. 149, § 148A, claiming that the company terminated his employment in retaliation for his participation in statutorily protected activity. The defendant has moved for summary judgment (dkt. no. 26).

**I.      Background**

Travers, a skycap employed by FSS, participated as a named plaintiff in a previous case that asserted claims against FSS and JetBlue Airways under the Fair Labor Standards Act. Travers v. JetBlue Airways Corp., No. 08-10730-GAO (D. Mass. filed Apr. 30, 2008) (order dismissing action as to all defendants entered on September 12, 2011). While that suit was pending, on September 3, 2010, a JetBlue passenger filed a complaint with FSS, reporting that the plaintiff solicited tips from her and treated her rudely. At the time the FSS Employee Handbook provided in relevant part:

> Solicitation of tips shall not be condoned. This includes any form of solicitation to include but not limited to – advising passengers of the amount of the tip that they must give to the employee for the service provided, refusing to provide service

>without first receiving a tip, selling weight, etc. Employees who are found to have solicited tips will be terminated immediately.

The Handbook also included a standard of conduct instructing uniformed employees to be "patient, courteous and respectful," as well as "tactful in the performance of their duties." They must "control their tempers, and exercise patience and discretion." The Handbook advised that "[f]ailure to adhere to this policy will result in disciplinary action up to and including termination."

On receiving the passenger's complaint, FSS immediately suspended Travers, conducted an investigation, and ultimately terminated him about three weeks after the complaint was received.

## II. Legal Standard

To prevail on a retaliation claim, a plaintiff "must demonstrate his engagement in statutorily protected activity, the fact of his dismissal, and a causal connection between the former and the latter." Kearney v. Town of Wareham, 316 F.3d 18, 23 (1st Cir. 2002). There is no dispute here that the plaintiff did engage in a statutorily protected activity and that his employment with FSS was thereafter terminated. The only remaining question is whether "the record, read in the light most favorable to [the plaintiff], suffices to support an inference as to whether retaliatory animus was the 'true reason or motive' for his dismissal." Id. Because direct evidence of causation is rare, circumstantial evidence often suffices. Examples of such circumstantial evidence "include, but are by no means limited to . . . comments by decisionmakers . . . [and] the incidence of differential treatment in the workplace . . . . " Mesnick v. Gen. Elec. Co., 950 F.2d 816, 824 (1st Cir. 1991) (citations omitted).

**II.     Discussion**

The plaintiff argues that his termination can be found to have been retaliatory based on evidence (1) that other employees disciplined for tip solicitation were not terminated, (2) that FSS did not conduct an adequate investigation of the incident before terminating him, and (3) that the Chairman and CEO has expressed an animus toward the plaintiff because of his participation in the FLSA lawsuit.

    A.     Disparate Treatment

In claiming that FSS has treated him more harshly than other employees, Travers points to the case of Jing Wei, who received no disciplinary action despite an allegation of tip solicitation. Wei was also a plaintiff in the FLSA suit, which somewhat weakens the inference of retaliation that Travers proposes. Beyond that, FSS responds that the decision not to terminate Wei was based on the absence of a first-hand account of his incident. In contrast, FSS proffers evidence that several other employees were terminated for soliciting tips, just like Travers, where there was a first-hand complaint from a customer. (See Rosin Aff., Ex. 10 (dkt. no. 28-10).) The defendant's Human Resources Director testified that FSS takes first-hand complaints seriously, especially those made at the airport, immediately after the incident, and even where the only evidence is a passenger's complaint and the employee's denial of the incident, "in most cases that person would be terminated." (Rosin Aff., Dep. of Sarah Collier at 26, 40 (dkt. no. 28-1).). This is because "for a passenger to escalate that up to making a complaint is a big deal. People don't have time in the airport to do that." (Id.)

The plaintiff's argument in response, that the defendant has failed to point to a written policy stating that a first-hand complaint will result in termination, is entirely unconvincing. The documentary evidence of FSS's treatment of other employees shows that its practice in this

respect has been followed consistently. All five employees who were terminated because of tip solicitation had confirmed first-hand complaints made against them; the complaints were made by passengers, or in one case, it was clear from the written complaint that the signatory family members were all present when the incident occurred. Travers has not shown that he was treated differently from similarly offending employees.

### B.    Inadequate Investigation

The plaintiff's also claims that FSS inadequately investigated the complaint against him, suggesting that the facts of the incident did not matter to FSS because the real reason for his termination was his participation in the FLSA suit. The record does not support the claim. An FSS supervisor spoke directly with the passenger about her complaint and asked the passenger to make a written statement. The FSS general manager met with Travers and took his written statement. It appears she also met with the supervisor who had talked directly with the complaining passenger. (See Rosin Aff., Ex. 8.) An investigation that included interviewing and taking statements from the parties involved in the incident is not an inadequate investigation, even if more might conceivably have been done.

As the First Circuit noted in Kearney, a court "act[s] with a certain restraint when examining an employer's personnel decisions. Our inquiry is not whether the [defendant's] decision was wise, but, rather, whether it violated the FLSA's antiretaliation provision." 316 F.3d 18, 25 (1st Cir. 2002) (citing Mesnick v. General Elec. Co., 950 F.2d 816, 825 ("Courts may not sit as super personnel departments, assessing the merits or even the rationality of employers' nondiscriminatory business decisions.")). Here, the plaintiff has failed to offer any "hard proof" to create a genuine issue of material fact regarding this issue. See id., 316 F.3d at 22 (". . . summary judgment is not a hollow threat. Creating a genuine issue of material fact requires

hard proof rather than spongy rhetoric.") (citations omitted).

### C. Retaliatory Animus

Finally, the plaintiff argues that Chairman and CEO Robert A. Weitzel, Sr.'s alleged animus and resentment toward the plaintiff and the JetBlue lawsuit supports an inference of retaliation. He claims that the company "specifically targeted" him for his active role in the JetBlue lawsuit. In support, the plaintiff points to the declaration of Robert Nichols, the plaintiff's prior manager, which states that Weitzel, Sr. often called Nichols to say that he "need[ed] to get rid of Joe" and that he should "try to talk Joe into dropping the lawsuit." However, even if Weitzel had harbored deep resentment against Travers and wished that he be fired, there is no evidence that Weitzel played any role whatsoever in the termination decision, nor is there any evidence that those who were involved in that decision knew of Weitzel's views about Travers. Nichols, the only manager shown to have had knowledge of Weitzel's sentiments, had left the company five months prior to the termination. Further, HR Director Collier's deposition testimony that she often spoke with President Robert "Bobby" Weitzel, Jr. about the legal fees associated with the JetBlue lawsuit is not enough to suggest retaliatory animus on the part of either Bobby Weitzel or Collier. Corporate executives' discussions about expenditures are nothing out of the ordinary.

In sum, the plaintiff has not proffered facts which, when viewed in the light most favorable to him, would support an inference that retaliatory animus was the real cause for his termination, rather than a demonstrated rules infraction. A reasonable jury could only find that element by speculating that the FSS personnel involved in the termination decision "must have

had" ill intentions toward the plaintiff, despite the absence of evidence in the record to support that speculation. Accordingly, there is no genuine dispute as to any material fact, and the defendant is entitled to judgment as a matter of law.

## IV.     Conclusion

For the reasons stated herein, the defendant's Motion for Summary Judgment (dkt. no. 26) is GRANTED. Judgment shall enter for the defendant.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge