UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 11-10175-RGS

JOSEPH TRAVERS

v.

FLIGHT SERVICES & SYSTEMS, INC.

MEMORANDUM AND ORDER ON
PLAINTIFF'S APPLICATION
FOR AN AWARD OF ATTORNEY'S FEES

August 14, 2014

STEARNS, D.J.

After a qualified success in pursuing a claim of retaliation to a verdict, plaintiff Joseph Travers now seeks the award of attorney's fees and costs that are mandated by the Massachusetts Wage Act, Mass. Gen. Laws ch. 149, § 150. The amounts requested total $193,690 in fees and $8,568.52 in costs. While the parties rely heavily on federal law in their briefs, for *Erie* purposes, the issue of attorney's fees is substantive and not procedural in nature. *In re Volkswagen and Audi Warranty Extension Litig.*, 692 F.3d 4, 15 (1st Cir. 2012). Consequently, state-law principles govern the award.

The amount of a reasonable attorney's fee awarded by statutory authority "is largely discretionary with the judge." *Stowe v. Bologna*, 417 Mass. 199, 203

(1994), abrogated on other grounds by *Fabre v. Walton*, 441 Mass. 9, 10-11 (2004); *see also Fontaine v. Ebtec Corp.*, 415 Mass. 309, 324 (1993). "[T]]he focus [in awarding a fee] is not the bill submitted . . . or the amount in controversy, . . . but consideration of several factors including 'the nature of the case and the issues presented, the time and labor required, the amount of damages involved, the result obtained, the experience, reputation and ability of the attorney, the usual price charged for similar services by other attorneys in the same area, and the amount of awards in similar cases.'" *Berman v. Linnane,* 434 Mass. 301, 303 (2001), quoting *Linthicum v. Archambault*, 379 Mass. 381, 388-389 (1979). The court is not required to allow or disallow each item of a submitted bill, but may consider the bill as a whole. *Twin Fires Inv., LLC v. Morgan Stanley Dean Witter & Co.*, 445 Mass. 411, 431 (2005) (stressing the obligation to submit precise details of the hours spent and the nature of the work performed). "[W]hen a fee request appears on its face dramatically disproportionate to the results the litigation produced . . . , the judge must focus with precision on the relationship between the time invested and the results achieved in order to insure that the 'time spent was [not] wholly disproportionate to the interests at stake.'" *Killeen v. Westban Hotel Venture LP.*, 69 Mass. App. Ct. 784, 796 (2007), quoting *Stratos v. Dep't of Pub. Welfare*, 387 Mass. 312, 323 (1982). Appropriate deductions include

duplication of effort, time spent by attorneys in correspondence with one another, overstaffing, "business" lunches, and excess hours in drafting simple motions. *Haddad v. Wal-Mart Stores, Inc.*, 455 Mass. 1024, 1027 (2010). The award of costs is also discretionary. *Berman*, 434 Mass. at 303.

Defendant Flight Services & Systems, Inc. (FSS) makes two arguments against any award, or at the least, a draconian reduction in the fee requested. The second ground, that the fee should be forfeited because of plaintiff Travers's alleged admission to underreporting his state and federal income tax liability (by understating the amount of tips that he received between 2007 and 2009) is the easier to reject. While Travers may have created future complications for himself with the Internal Revenue Service by testifying as he did, there is no authority that I am aware of (and none is cited) that would punish the lawyer for the tax defalcations of her client in a case that had nothing to do with tax issues, tax advice, or any misrepresentation of tax matters at trial. Defendant's second argument, that the fee should be reduced because of counsel's alleged lack of professionalism and misconduct at trial, has at first glance more heft. In this case, the alleged misconduct of counsel consisted of (1) ignoring the court's admonition to curtail a "missing witness" theme in closing argument, (2) attempting to elicit a hearsay statement from a witness without first establishing a basis for its admissibility, and (3) failing

3

to inform the court about the timing of a statement attributed to the President of FSS by a former supervisor who worked with Travers.

To my mind, none of these alleged transgressions, while of varying degrees of seriousness, rose to the level of a sanctionable breach of professional ethics. The first and most serious of counsel's errors I attribute to the penchant for overzealous rhetoric that often overcomes even experienced counsel in the heat of a closing argument at trial. The risk of prejudice arose from counsel's insinuation that FSS had special access to a non-appearing witness, Michelle Saulnier (the customer who had complained about Travers' improper solicitation of a tip), and had chosen to suppress her testimony because "they [had] got the wrong skycap." Counsel was in fact well aware at the time that FSS had made diligent efforts to locate Ms. Saulnier. Moreover, counsel knew that there was nothing in the record to suggest that Ms. Saulnier had recanted her description of Travers or his behavior. Standing alone, this errant argument might have justified a mistrial (which FSS did not request). Notwithstanding, any ultimate risk of prejudice was allayed by the court's explanation (twice) to the jury that witnesses are equally available to both sides in a civil case, and by the court's ultimate rebuke to counsel in the jury's presence that "she shouldn't be doing this." The second error was simply a misunderstanding of the court's reason for sustaining the hearsay objection.

It was not because the proffered testimony was violative of Fed. R. Evid. 408(a), as FSS contended, but rather because counsel had failed to establish the authority under Fed. R. Evid. 810(d)(2)(D) of Lisa Variotis to make the statement attributed to her.[1] The third error, as the court stated at the hearing on the motion for remittitur/new trial, falls on the shoulder of the court (and not counsel) for not having been more attentive to the conflict in testimony over Robert Nichols' employment status at the time the alleged statement was made.[2]

Having disposed of these objections, I turn to the fee request itself, mindful of the factors identified by the Supreme Judicial Court in *Linthicum*. As plaintiff's counsel observes, FSS makes no particular objection to the number of hours expended on the case or the hourly rates charged by Ms. Liss-

---

[1] The settlement offer proffered by FSS – which was the subject of its Rule 408(a) objection – was not addressed to Variotis, nor was there any evidence that she ever saw it.

[2] The cases cited by FSS as justifying a fee reduction as a sanction for misconduct do not involve instances of statutory fee-shifting. In the case of *In re Goldstein*, 430 F.3d 106 (2d Cir. 2005), the court reduced the fee because of the attorney's egregious abuse of his client. The other examples offered, for instance, *Lee v. Am. Eagle Air, Inc.*, 93 F. Supp. 2d 1322 (S.D. Fla. 2000), and *Lawyer Disciplinary Bd. v. Hall*, 633 S.E.2d 241 (W. Va. 2006), involve blatant overbilling.

Riordan ($600),[3] Ms. Tully ($250), and Mr. Cassavant ($300). While I have no doubt that Ms. Schwab is also worth the $450 hourly rate listed, her role in the case ("conduct[ing] some discovery and assist[ing] in overseeing discovery) is insufficiently explained to justify the 38.9 hours charged on her account. Consequently, I have reduced the fee award by $17,505. Otherwise, I find the number of hours expended and the tasks indicated to be very reasonable given a heavily litigated case that involved an appeal and culminated in a five-day jury trial.

With respect to costs, I agree with FSS that the $950.07 attributed to "multiple trial subpoenas" and the $220 allocated to "investigator expenses" are insufficiently documented to warrant reimbursement. Consequently, I have reduced the requested bill of costs by $1,170.07.

ORDER

For the foregoing reasons, the court awards plaintiff attorneys' fees of $176,185 and costs of $7,398.45. The Clerk will amend the Judgment to reflect the award and close the district court case.

---

[3] While a $600 hourly rate might seem on the high side in light of the caution of *Smith v. Consalvo*, 37 Mass. App. Ct. 192, 196 (1994), that "[w]hen legal expenses are collected from a party other than the one who received the legal services a degree of conservatism in fee determination is in order," I am mindful of the fact that cases like this one are typically litigated on a contingency basis with no assurance that any fee at all will eventually be paid.

SO ORDERED.

/s/ Richard G. Stearns
_____
UNITED STATES DISTRICT JUDGE